IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COMMODORE JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.   14-cv-776-MJR-SCW |
| | ) |
| TERRI BRYANT, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Commodore Jackson filed his complaint against Terri Bryant alleging that she was indifferent to his nutritional needs while Plaintiff was incarcerated at the Pinckneyville Correctional Center. This matter is before the Court on Defendant's motion for summary judgment (Doc. 61). Plaintiff has filed a response in opposition to the motion (Docs. 64 and 67). For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment.

FACTUAL BACKGROUND

Plaintiff was a prisoner at Pinckneyville Correctional Center from December 2012 until he was transferred in March 2014 (Doc. 62-5). Plaintiff's complaint alleges that while he was at Pinckneyville, Defendant implemented a brunch program that combined breakfast and lunch and thus denied him adequate nutrition. When Plaintiff first transferred to Pinckneyville, the brunch program was only used on weekends, but the prison later instituted the program on a daily basis around August 2013 (Doc. 62-1, p. 9-10; Doc. 67, p. 8). He originally received three meals during the week and two meals

on weekends, but with the implementation of the brunch program full-time, Plaintiff only received two meals each day (*Id.* at p. 10). Plaintiff was initially placed in segregation at Pinckneyville and received his meals in his cell through the food slot (*Id.* at p. 11). He was on lockdown twenty-four hours a day, seven days a week (*Id.* at p. 12).

Plaintiff received a vegan diet while at Pinckneyville (Doc. 62-1, p. 13). He was not initially on a vegan diet when he arrived at Pinckneyville as the chaplain was on vacation when Plaintiff transferred, but he eventually was put on a vegan diet (*Id.*). During the brunch program, for breakfast Plaintiff received a breakfast patty, oatmeal, lettuce, vegetables, bread, milk and juice (*Id.* at p. 14). Plaintiff believed this amount of food was inadequate for an adult male. The average dinner tray would consist of the same patty in gravy, bread, rice, and vegetables (*Id.* at p. 14-15). Brunch was served at 9:00 a.m. and dinner was served at 3:00 p.m. (*Id.* at p. 15). As Plaintiff was in segregation he did not have the opportunity to purchase more food from the commissary (*Id.* at p. 15). Plaintiff was also not allowed to save food off of his tray for later, although he sometimes snuck bread from the tray and kept it (*Id.* at p. 15-16).

Plaintiff testified that he believed that he lost weight and that the brunch program gave power to the officers passing out the trays who would pay inmates in extra trays to fight other inmates (Doc. 62-1, p. 16). Plaintiff testified that he would also be denied food for talking at night or for not tucking in his shirt in the chow hall (*Id.* at p. 18). Plaintiff testified that an adult male was supposed to have between 2,300 and 2,500 calories a day (*Id.* at p. 22). While Plaintiff did not know the actual calorie count for the

food he received at Pinckneyville, he did not believe that it was enough (*Id*. at p. 23).

Terri Bryant was a food service manager at Pinckneyville during the time period at issue (Doc. 62-2, p. 1). As a food manager, Bryant supervised other personnel and inmate workers, ensured that health codes were followed, and ensured that the kitchen followed the master menu and adhered to any special diets (*Id*.). She supervised the food supervisors who were in charge of day-to-day operations (*Id*.). Bryant was not a dietician but spent several years in the food service industry (*Id*.). In 2012 to 2013, Bryant was ordered by the warden to pilot a brunch program which required that two meals be served to the inmates, rather than the traditional three meals per day. The Illinois Department of Corrections' Registered Dietician, Suzann Bailey, wrote the master menu to comply with the two meal plan, in order to ensure that sufficient calorie needs were met for the inmates (*Id*. at p. 1-2). The master menus were then provided to Bryant and she followed those menus in making the meals, only substituting items when necessary (*Id*. at p. 2; 62-3; 62-4). If substitutions were made, it was for a similar item. For example, if Bryant had to substitute a vegetable, she would substitute that vegetable with another vegetable of the same portion size (Doc. 62-2, p. 2).

Plaintiff states that, as a result of the brunch program, Plaintiff was denied 183 meals as he only received two meals a day during the relevant time period (Doc. 67, p. 9). Plaintiff refers to the exhibits in his complaint as evidence of his claims.[1] One affidavit

---

[1] While Plaintiff points to exhibits in his amended complaint, the Court denied him leave to amend his complaint (Doc. 31). Thus, the only complaint is Plaintiff's original

Page **3** of **10**

from Plaintiff states that he spoke to the assistant warden on January 6, 2014 about the brunch program and told the warden that inmates needed 2,300 calories per day, but the warden replied that inmates were only required to receive 1,800 calories (Doc. 1, p. 24). Further, an affidavit from inmate Darnell Carraway states that he was also at Pinckneyville and was subjected to the brunch program. Carraway testified that for dinner on one occasion he received two tamales and a small portion of macaroni and lettuce with no cheese or chili for dinner (Doc. 1, p. 25). He did not receive another tray until the next day for brunch (*Id.*). Carraway also testified that prior to the brunch menu, inmates received two milks for breakfast and one milk and one juice for lunch, but when the prison switched to the brunch menu the inmates did not receive juice (*Id.*). Plaintiff also points out that numerous inmates signed on to his grievance complaining about the brunch program and the denial of three meals per day (Doc. 1, p. 22-23, 28).

## LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Marketing & Trade v. Multiut Corp.,* 648 F.3d 506, 517 (7th Cir. 2011) (*citing* FED. R. CIV. P. 56(a)).** A fact is material if it is outcome determinative under applicable law, and a genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

complaint (Doc. 1) and the Court refers to the exhibits in that complaint.

party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and the other information submitted—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a proper motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, **477 U.S. at 250 (***quoting* **FED. R. CIV. P. 56(e)(2)).** A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing the motion when it presents definite, competent evidence to rebut it. *Szymanski v. Rite-Way Lawn Maintenance Co., Inc.*, **231 F.3d 360, 364 (7th Cir. 2000).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant, and adopts reasonable inferences and resolves doubts in the non-movant's favor. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** Even if the material facts are not in dispute, summary judgment is inappropriate when the information before the Court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).**

### B. Conditions of Confinement

Inmates must be provided with "adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Knight v. Wiseman*, **590 F.3d 458, 463 (7th Cir. 2009).** The denial of food is not a per se

constitutional violation; rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, **178 F.3d 849, 853 (7th Cir. 1999).** In order to succeed on a claim for inhumane conditions of confinement, an inmate must establish: (1) that he was housed under conditions that were "sufficiently serious so that a [prison] official's act or omission results in the denial of the minimal civilized measure of life's necessities," and (2) that the defendant was deliberately indifferent to that risk. *Townsend v. Fuchs*, **522 F.3d 765, 773 (7th Cir. 2008);** *Grieveson v. Anderson*, **538 F.3d 763, 775 (7th Cir. 2008).** In order to prove deliberate indifference, the plaintiff must show that the officials actually knew of the condition but refused to take reasonable steps to resolve it. *Townsend*, **522 F.3d at 773;** *Grieveson*, **538 F.3d at 775.**

ANALYSIS

### A. Plaintiff's Declaration

Prior to filing his summary judgment response, Plaintiff also filed a declaration with the Court (Doc. 64). The declaration indicates that Plaintiff has many witnesses that would testify as to his claims but that he needs declarations from those inmates who signed his grievance. Plaintiff also indicates that he did not receive a copy of his medical records from the Defendant. Defendant Bryant filed a response to the declaration indicating that Plaintiff could have requested affidavits or a meeting with his inmate witnesses with the warden or could have sought leave to depose them from the Court (Doc. 68). Defendants acknowledge that they did not provide Plaintiff with his medical records because he never returned a release for disclosure of those records.

To the extent that Plaintiff seeks discovery from the Court concerning affidavits or depositions of his witnesses, the Court must deny that request. Plaintiff never requested depositions from the lion's share of those witnesses prior to the close of discovery. While Plaintiff did ask for the deposition of inmate Carraway (Doc. 35), the Court instructed Plaintiff on how to seek depositions but Plaintiff didn't follow those instructions. In addition, Plaintiff already has an affidavit from Carraway. Plaintiff also did not seek help with obtaining affidavits prior to the close of discovery and, as Bryant points out, Plaintiff could have obtained affidavits on his own from some inmates. Plaintiff also does not specifically indicate what those inmates would have declared other than the fact that they signed Plaintiff's grievance, and Plaintiff has already offered evidence to that effect (Doc. 1, p. 28). Plaintiff suggests that the inmates would testify as to the insufficiency of the food at Pinckneyville, but he does not provide any specifics. In any event, Plaintiff did not seek this information prior to the close of discovery and the Court will not allow Plaintiff to seek this material so late in the case. Nor will the Court reject Defendant's dispositive motion merely because Plaintiff does not have affidavits or depositions from his witnesses. At the end of the day, it was Plaintiff's burden to obtain discovery in a timely fashion, and he failed to do so.

As to Plaintiff's medical records, while Defendant admits that the records were not provided to Plaintiff, Defendant states that is because Plaintiff never returned a release so that Defendant could disclose them. There is also no indication that Plaintiff sought the records on his own and he did not present this issue to the Court prior to the

close of discovery. Nor is there any indication from Plaintiff that the medical records will set forth an issue of fact which would prevent the award of summary judgment in this case. As such, the Court must also deny Plaintiff's declaration to the extent that it seeks records discovery or a denial of the dispositive motion for lack of this discovery.

### B. Terri Bryant

Defendant Bryant argues that she is entitled to summary judgment as she had no direct involvement with creating the brunch program or with serving the actual food to prisoners. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, a defendant can only be held liable under § 1983 if she was "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). In other words, an individual can only be held liable for her own personal actions and her own knowledge—a defendant isn't typically liable for the actions of others, including those under her command. *E.g., Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). In the supervisory context, "supervisors who are merely negligent in failing to detect and prevent [their] subordinates' misconduct are not liable." *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). That said, a supervisor can be liable under § 1983 for her subordinates' acts when the supervisor "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at [the supervisor's] direction or with her knowledge and consent." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).

Bryant argues that she was not in charge of creating the brunch program, nor was she involved in actually putting the food on Plaintiff's tray (so that she was aware of how much food Plaintiff was actually receiving). Bryant testified that as Food Service Manager she supervised the Food Service personnel and made sure that all health codes were followed (Doc. 62-2, p. 1). She also made sure that the master menu was followed (*Id.*). But Bryant was not a dietician nor did she create the master menus. Rather, the Illinois Department of Corrections' dietician, Suzann Bailey, created the master menu, which indicated what items were to be served and incorporated the daily caloric needs (*Id.* at p. 1-2). Bryant merely prepared the menu based on Bailey's plan (*Id.* at p. 2). While she was told to "pilot" the program, that only meant that she followed the menu that was implemented by Bailey, who wrote the two meal plan (*Id.* at p. 1-2). Bryant also did not personally prepare trays nor was she in charge of supervising workers to make sure that the proper amount of food was placed on the trays (*Id.* at p. 2).

In his summary judgment response, Plaintiff does not offer much if anything in the way of argument to back up Bryant's personal involvement, and the Court is of the view that she had insufficient involvement here to allow for liability under § 1983. Plaintiff's complaint takes issue with the make-up of the brunch program, arguing that the two meal policy denied him adequate caloric needs, but there is no evidence that Bryant created that policy. The record indicates that Bryant merely ensured that the menu, created and implemented by dietician Suzann Bailey, was followed at each meal (Doc. 62-2, p. 2). Plaintiff's complaint also takes issue with the fact that some of the

servers didn't give him all of the items he was to receive, but Bryant was not personally responsible for providing the designated food on the menu to the prison's inmates. Given this evidence, and especially in light of the fact that Plaintiff makes no real argument in his response to Bryant's motion for summary judgment as to her personal involvement in the case, the Court finds that Bryant lacked the kind of personal involvement in Plaintiff's brunch claim needed to support liability under § 1983.

## CONCLUSION

To the extent Plaintiff's declaration seeks additional untimely discovery, those requests (Doc. 64) are **DENIED**. The Court further **GRANTS** Defendant Bryant's motion for summary judgment (Doc. 61). Because there are no further claims in this case, the **CLERK** is **DIRECTED** to enter judgment consistent with this order.

**IT IS SO ORDERED.**

DATED:  August 26, 2016

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**